# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF NEW YORK

––––––––––––––––––––––

№ 21-CV-5185 (PKC) (RER)

––––––––––––––––––––––

SHANRU LI,

Plaintiff,

VERSUS

FLEET NEW YORK METROPOLITAN REGIONAL CENTER LLC, LAGUARDIA PERFORMANCE CENTER, LLC, EEGH II, L.P., AND RICHARD XIA,

Defendants.

––––––––––––––––––

**MEMORANDUM & ORDER**

May 25, 2022

––––––––––––––––––

**RAMON E. REYES, JR., U.S.M.J.:**

Plaintiff, Shanru Li ("Li"), commenced this action on September 17, 2021 on behalf of himself and similarly situated international investors against EEGH II, L.P. (the "Partnership,"), its General Partner, Fleet New York Metro Regional Center LLC (the "General Partner" or "New York Metro"), an affiliated real estate developer, LaGuardia Performance Center, LLC (the "Developer"), and their mutual President, Richard Xia ("Xia") (collectively, the "*Li* Defendants"), alleging common law fraud, breach of fiduciary duty, and aiding and abetting breach of fiduciary duty. (ECF No. 1 ("Li Compl.") ¶¶ 1, 4–5, 11–12, 18–22, 79–105).

Four days after Li's complaint was filed, Ji Su Ai, Ruohong Li, and Yi Ding (collectively, "the *Ai* Plaintiffs" and together with Li, the "Plaintiffs") filed a separate class action complaint containing substantially similar factual allegations and asserting the same causes of action against

1

Xia, New York Metro, and two substitute defendants: a different EB-5 investment vehicle, EEGH, L.P. (together with EEGH II, L.P., the "Partnerships"), whose General Partner is also New York Metro; and a different developer, Eastern Emerald Group LLC (together with LaGuardia Performance Center, LLC, the "Developers") (collectively, with the *Li* Defendants, the "Defendants" or the "Fleet Group"), which is also affiliated with and controlled by Xia, all of which allegedly solicited funding from foreign investors to develop the same luxury hotel complex in Corona, Queens. (*See* ECF No. 1, ("Ai Compl."), *Ai v. Federal New York Metropolitan Regional Center LLC, et al.*, 21-CV-5250 (PKC) (RER) (E.D.N.Y. Sept. 21, 2021)).

After Defendants failed to appear, answer, or otherwise timely respond to Plaintiffs' complaints in both actions, Plaintiffs requested, and the Clerk of the Court entered, certificates of default against all Defendants. (ECF No. 12; *see also* ECF No. 12, *Ai*, 21-CV-5250 (E.D.N.Y. Nov. 30, 2021)). On December 8, 2021, the Honorable Pamela K. Chen consolidated the *Li* and *Ai* actions pursuant to Rule 42(a). (See Order dated 12/08/2021). [1]

Before the Court is Defendants' motion to set aside the Clerk's entries of default against all Defendants in the consolidated action pursuant to Rule 55(c) of the Federal Rules of Civil Procedure. (ECF No. 17 ("Def's Mot.")), which Judge Chen referred to me on December 13, 2021. (*See* Order dated 12/13/2021). Plaintiffs oppose the motion. (ECF No. 21 ("Pl's Opp.").

---

[1] *Li* is the lead case in the consolidated action. Relatedly, the Securities and Exchange Commission ("SEC") filed a civil complaint against Xia, New York Metro, and Xia's wife, Julia Yue, in connection with the schemes described by both the *Li* and the *Ai* plaintiffs, alleging securities fraud constituting violations Section 17(a) of the Securities Act, 15 U.S.C. § 77q(a); Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and of Rule 10b-5 thereunder, 17 C.F.R. § 240.10b-5; and alleging unjust enrichment. (*See* ECF No. 1, Complaint ¶¶ 149–159, *S.E.C. v. Xia*, No. 21-CV-5350 (PKC) (RER) (E.D.N.Y. Sept. 27, 2021). On the same day, the Court granted the SEC's emergency *ex parte* motion for a temporary restraining order, imposed a freeze on the Defendants' assets, and appointed a monitor to oversee and investigate the Defendants' business to protect investors. (ECF No. 11, Sealed Order to Show Cause and Temporary Restraining Order Freezing Assets, Appointing a Monitor, and Granting Other Relief, ("TRO"), *S.E.C.*, No 21-CV-5350 (E.D.N.Y. Sept. 27, 2021). Though not a part of the consolidated action, the SEC action and the asset freeze inform the Court's decision here.

After carefully reviewing the record, for the reasons set forth herein, the Defendants' motion is granted.[2] The Clerk of the Court is therefore directed to vacate the Certificates of Default entered against all Defendants. (ECF No. 12; *see also* ECF No. 12, *Ai*, 21-CV-5250 (E.D.N.Y. Nov. 30, 2021)). Defendants are directed to file and serve answers to the complaints within twenty (20) days of receipt of this Memorandum and Order.

## **BACKGROUND**

I.   Factual Allegations

EEGH L.P. and EEGH II, L.P. are Queens-based limited partnerships and investment vehicles formed under the laws of the State of New York by the Fleet Group to finance the construction, operation, and expansion of a commercial real estate development project in Corona, Queens (the "Project"). (Li Compl. ¶¶ 4, 21, 27, 32; Ai Compl. ¶¶ 4; 23, 29, 35; *see also* ECF No. 19-5 ("EEGH LPA") at 1; ECF No. 19-6 ("EEGH II LPA") at 1). According to the complaints, the Partnerships and their shared General Partner, New York Metro, are all part of the Fleet Group and are controlled and dominated by Xia. (Li Compl. ¶¶ 3, 22; Ai Compl. ¶¶ 3, 24).

Beginning in or around 2013, the Fleet Group began soliciting funds from foreign investors like Plaintiffs in connection with the Project, offering them the opportunity to become limited partners in exchange for a $500,000 capital contribution. (Li Compl. ¶¶ 4, 24–26, 29–30; Ai Compl. ¶¶ 4, 26–28; 31–32). According to the solicitation materials that each investor received,

---

[2] "In contrast to a motion for default judgment, which seeks dispositive relief, a motion to vacate an entry of default is not a dispositive motion and thus may be addressed by a magistrate judge in a memorandum and order, rather than a report and recommendation." *Renna v. Bright Mountain Media, Inc*., No. 19-CV-5510 (LDH), 2020 WL 6786011, at *1 (E.D.N.Y. Oct. 19, 2020); *see also Sheet Metal, Air, Rail & Transportation Workers Loc. Union No. 137 v. Frank Torrone & Sons, Inc.,* No. 15-CV-2224 (KAM) (PK), 2018 WL 4771897, at *8 (E.D.N.Y. Oct. 3, 2018) (collecting cases); *Heidi & Hans-Jurgen Koch GbR v. Blue Label Sols. LLC*, No. 21 Civ. 2937 (LAK) (KHP), 2021 WL 5647793, at *1 n.1 (S.D.N.Y. Dec. 1, 2021) ("A motion to set aside entry of default is subject to disposition by a Magistrate Judge under 28 U.S.C.§ 636(b)(1)(A).") (citing *Johnson v. New York Univ.*, 324 F.R.D. 65, 67 n.2 (S.D.N.Y. 2018), *aff'd*, 800 *F. App'x* 18 (2d Cir. 2020)).

the proceeds raised in each offering would be loaned to the Developers—affiliated real estate management and development companies which Plaintiffs allege are part of the Fleet Group and are controlled by Xia—and would be used to build and develop the Project: a large mixed-use commercial building that, when complete, would include a luxury hotel, restaurants, retail space, a convention center, a performing arts center, and a parking garage. (Li Compl. ¶¶ 4–5, 22, 28–38; *see also* Ai Compl. ¶¶ 4–5, 24, 30–43 (describing the same project with less square footage and no performing arts center)).

In addition to their monetary investment, limited partners would get an opportunity to immigrate to the United States pursuant to the EB-5 program, which permits qualified foreign investors to obtain temporary conditional permanent resident status, and eventually unconditional permanent resident status (commonly known as a green card), upon a showing that their investment will satisfy certain job-creation requirements. (Li Compl. ¶¶ 23–26, 29, 40–42; Ai Compl. ¶¶ 25–28, 31, 45–47). For the purpose of demonstrating compliance with EB-5 program requirements, the Developers would serve as "job creating entities," and the cost of building and operating the hotel complex would be used to calculate the number of jobs that would be created by the Project. (Li Compl. ¶¶ 28, 37; Ai Compl. ¶¶ 30, 41).

According to the complaints, the Fleet Group eventually raised $55 million in capital from 110 foreign investors, including Li, in connection with the EEGH II L.P. offering, and raised $80 million in capital from 160 foreign investors, including the *Ai* Plaintiffs, in connection with the EEGH L.P. offering. (Li Compl. ¶ 39; Ai Compl. ¶ 44). After making their investments, the limited partners submitted immigration petitions and documentation regarding the Project to USCIS, the federal agency that administers the EB-5 program, and received temporary green cards. (Li Compl. ¶¶ 25–26, 40–41; Ai Compl. ¶¶ 27–28, 45–46). Li, for example, is a citizen of China and currently

4

resides in Chino, California. (Li Compl. ¶¶ 18, 41). The named *Ai* Plaintiffs are also citizens of China, but reside outside the United States. (Ai Compl. ¶¶ 18–20).

Plaintiffs allege that the offering documents the investors relied upon in deciding to invest in the Partnerships, including the private placement memoranda, the limited partnership agreements, and the business plans associated with their investments, contained material misrepresentations and omissions regarding the Project which constitute fraud. (Li Compl. ¶¶ 6–11, 31–38, 43–69, 79–86; Ai Compl. ¶¶ 6–11, 33–43, 48–74; 84–91). In particular, Plaintiffs allege that the Fleet Group repeatedly and knowingly provided false or misleading information about the scope of the Project and the size of the development site, including representations in the offering documents that conflict with those in documents submitted to local administrative agencies, and reflect plans that Defendants knew would not be permissible under local zoning requirements. (Li Compl. ¶¶ 43–72; Ai Compl. ¶¶ 48–77). As a result, Plaintiffs argue that the discrepancy between their understanding of the Project and its true nature will negatively impact the investors' future applications for unconditional permanent residency, as the smaller-than-promised Project will not meet the job-creation targets required to obtain a permanent green card through the EB-5 program. (Li Compl. ¶¶ 42, 66–69; Ai Compl. ¶¶ 47, 72–74).

Plaintiffs further argue that through these misrepresentations and omissions and by failing to ensure that the Developers proceeded diligently to satisfy the EB-5 program's job creation requirements, the General Partner and Xia breached their fiduciary duties owed to their limited partners, and that the Developers and Xia are separately responsible for aiding and abetting those breaches of fiduciary duties. (Li Compl. ¶¶ 87–105; Ai Compl. ¶¶ 92–110). Indeed, according to Plaintiffs, while the limited partners have received temporary green cards, the Defendants' failure to diligently pursue the development of the Project as planned will prevent them from obtaining

the unconditional permanent resident status that they expected to receive in exchange for their investment. (Li Compl. ¶¶ 41–42, 66–72; Ai Compl. ¶¶ 46–47, 72–77).

## II.    Procedural History

On September 17, 2021, Li filed a class action complaint on behalf of himself and similarly situated investors. (*See* Li Compl.). Four days later, the *Ai* Plaintiffs filed a second class action complaint. (*See* Ai Compl.). After Plaintiffs filed summonses returned executed by all Defendants (ECF Nos. 7–10; *see also* ECF No. 7, *Ai*, 21-CV-5250 (E.D.N.Y. Oct. 20, 2021); ECF Nos. 8–10, *Ai*, 21-CV-5250 (E.D.N.Y. Oct. 29, 2021)),[3] and after all Defendants subsequently failed to file answers or otherwise respond to the complaints, Plaintiffs requested certificates of default on November 22, 2021 (ECF No. 11; *see also* ECF No. 11 *Ai*, 21-CV-5250 (E.D.N.Y. Nov. 22, 2021)). The Clerk of the Court then entered defaults in both cases the following week, on November 30, 2021. (ECF No. 12; ECF No. 12, *Ai*, 21-CV-5250 (E.D.N.Y. Nov. 30, 2021)).

Less than a week later, Defendants filed letters on both dockets indicating that they intended to file motions to set aside the entries of default. (ECF No. 14; ECF No. 14, *Ai*, 21-CV-5250 (E.D.N.Y. Dec. 6, 2021)). Two days later, pursuant to Rule 42(a), the cases were consolidated, with *Li* designated as the lead case. (*see* Order dated 12/08/2021). Defendants subsequently filed the instant motion to vacate the Clerk's entries of default on December 10, 2021, which was referred to me on December 13, 2021. (*See* Def's Mot.; Order dated 12/13/2021).

---

[3] After three attempts at personal service, Xia was served by conspicuously posting the summonses and complaints at the entrance of his residential address, 42-55 Saull St., Flushing, NY 11355, and by subsequently mailing the same materials to the same address (*i.e.*, by "nail-and-mail"). (ECF No. 7; ECF No. 7, *Ai*, 21-CV-5250 (E.D.N.Y. Oct. 20, 2021)). The Partnerships, the General Partner, and the Developers were served via the New York Secretary of State pursuant to Section 121-109(a) of New York's Revised Limited Partnership Act, N.Y. P'ship Law § 121-109, and Section 303 of New York's Limited Liability Company Law, NY Limit. Liab. Co. § 303, as applicable. (ECF Nos. 8–10; ECF Nos. 8–10, *Ai*, 21-CV-5250 (E.D.N.Y. Oct. 29, 2021)). As discussed below, Defendants contest the sufficiency of service.

## DISCUSSION

Rule 55(a) of the Federal Rules of Civil procedure provides that "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Fed. R. Civ. P. 55(a). "The entry of default is therefore not discretionary." *Bricklayers & Allied Craftworkers Loc. 2, Albany, N.Y. Pension Fund v. Moulton Masonry & Const., LLC*, 779 F.3d 182, 186 (2d Cir. 2015) (per curiam). Once default is entered, however, "[t]he clerk may set aside an entry of default for good cause." Fed. R. Civ. P. 55(c).

"Because Rule 55(c) does not define the term 'good cause,' the Second Circuit has established three criteria that must be assessed in order to decide whether to relieve a party from default or from a default judgment." *Bricklayers*, 779 F.3d at 186. (quoting *Enron Oil Corp. v. Diakuhara*, 10 F.33d 90, 96 (2d Cir. 1993) (alterations omitted). These criteria, commonly referred to as the *Enron* factors, "are: '(1) the willfulness of default, (2) the existence of any meritorious defenses, and (3) prejudice to the non-defaulting party.'" *Id.* (quoting *Guggenheim Capital, LLC v. Birnbaum,* 722 F.3d 444, 455 (2d Cir. 2013)). "Other relevant equitable factors may also be considered, for instance, whether the failure to follow a rule of procedure was a mistake made in good faith and whether the entry of default would bring about a harsh or unfair result." *Enron Oil Corp.*, 10 F.3d at 96 (citing *Sony Corp. v. Elm State Elecs., Inc.*, 800 F.2d 317, 320 (2d Cir. 1986)).

"[B]ecause defaults are generally disfavored and are reserved for rare occasions, when doubt exists as to whether a default should be granted or vacated, the doubt should be resolved in favor of the defaulting party." *Enron Oil Corp.*, 10 F.3d at 96; *see also Trs. of Loc. 7 Tile Indus. Welfare Fund v. Gibraltar Contracting, Inc.*, No. 18-CV-3042 (RRM) (RER), 2020 WL 9209262, at *4 (E.D.N.Y. Oct. 23, 2020), *adopted by* 2021 WL 1207123 (Mar. 31, 2021) ("Because default judgments are generally disfavored, the factors should be construed generously.") (quoting *State*

*St. Bank & Tr. Co. v. Inversiones Errazuriz Limitada*, 374 F.3d 158, 168 (2d Cir. 2004)); *Int'l Reformed Univ. & Seminary v. Newsnjoy USA*, No. 13-CV-3156 (JS) (GRB), 2014 WL 923394, at *3 (E.D.N.Y. Mar. 10, 2014) ("'It is well established that default judgments are disfavored,' and that 'a clear preference exists for cases to be adjudicated on the merits.'") (quoting *Pecarsky v. Galaxiworld.com, Ltd.*, 249 F.3d 167, 171 (2d Cir. 2001)).

I. <u>Willfulness</u>

"Because the central purpose of a default judgment is to protect parties and the courts from harassment and purposeful delay, willfulness must involve more than carelessness or negligence by the defaulting party." *Gibraltar Contracting, Inc.*, 2020 WL 9209262, at *5 (citing *New York v. Green*, 420 F.3d 99, 108 (2d Cir. 2005); *S.E.C. v. McNulty*, 137 F.3d 732, 738 (2d Cir. 1998). Accordingly, "[i]mprudent, inattentive, careless, or even negligent handling of a case, although not to be condoned, does not demonstrate willfulness." *Id.* (quoting *Gravatt v. City of New York*, No. 97 Civ. 0354 (RWS), 1997 WL 419955, at *3 (S.D.N.Y. July 28, 1997)). Similarly, "[a] finding of bad faith is not a necessary predicate to concluding that a defendant acted 'willfully.' Rather, 'it is sufficient' to conclude 'that the defendant defaulted deliberately.'" *Bricklayers*, 779 F.3d at 187 (quoting *Gucci Am., Inc. v. Gold Ctr. Jewelry*, 158 F.3d 631, 635 (2d Cir. 1998)).

A court may find that a defendant defaulted deliberately "where the conduct of counsel or the litigant was egregious and was not satisfactorily explained." *McNulty*, 137 F.3d at 738 (citing *Am. All. Ins. Co. v. Eagle Ins. Co.*, 92 F.3d 57, 60–61 (2d Cir. 1996)). For instance, a court may "refuse to set aside a default where the moving party has made a strategic decision to ignore the litigation." *Nikolaeva v. Home Attendant Servs. of Hyde Park*, No. 15-CV-6977 (NGG) (RER), 2018 WL 6984837, at *2 (E.D.N.Y. Nov. 16, 2018) (citing *Am. All. Ins. Co.*, 92 F.3d at 60–61), *adopted by* 2019 WL 147721 (Jan. 9, 2019); *see also Guggenheim Cap., LLC*, 722 F.3d at 449, 455 (finding

"an inference of willful default" where despite receiving extensions of time and admonitions to comply from the court, defendant did "not deny that he received the complaint, the court's orders, or the notice of default judgment, or that he never answered the complaint," and did "not contend that his non-compliance was due to circumstances beyond his control"); *Kulwa v. Obiakor OB/GYN P.C.,* No. 12-CV-1868 (JG) (MDG), 2013 WL 504383, at *7 (E.D.N.Y. Feb. 8, 2013) (refusing to vacate default where defendant had actual notice of litigation and made a tactical decision not to answer); *Walden v. Lorcom Techs., Inc.*, No. 05-CV-3600 (ARR) (RER), 2007 WL 608151, at *3 (E.D.N.Y. Feb. 23, 2007) ("[C]ourts most often find defaults not to be willful where the defaulting parties did not have actual notice of the litigation.") (citing *Enron Oil Corp.*, 10 F.3d at 98). Given the disfavored nature of defaults, "[c]ourts should 'resolve any doubt about a defendant's willfulness in his favor.'" *Newsnjoy USA*, 2014 WL 923394, at *3 (quoting *Raheim v. New York City Health and Hosps. Corp.,* No. 96–CV–1045 (JFB) (CPP), 2007 WL 2363010, at *3 (E.D.N.Y. Aug. 14, 2007)); *see also Flanagan v. Modern Concrete Corp.*, No. 07-CV-499 (JFB) (ARL), 2008 WL 2559377, at *3 (E.D.N.Y. June 23, 2008) (same).

Here, Defendants argue primarily that this is not a case of bad faith or egregious and unexplained conduct; rather, the Defendants did not respond to the complaints because they were not properly served. (ECF No. 18 ("Def's Mem.") at 1, 4–6). In August 2021, Xia moved from the home where Plaintiffs attempted to effect personal service the following month, and where Plaintiffs purportedly served him via "nail-and-mail" in October 2021. (*Id*. at 4–5; *see also* ECF No. 20 ("Xia Decl.") ¶ 13). The Partnerships, General Partner, and Developers similarly moved offices in August 2021, but had not yet updated their addresses at the time of service such that they were not notified of service by the Secretary of State. (Def's Mem. at 5; Xia Decl. ¶¶ 11–12). Indeed, even if they had not moved, notices were not sent by the Secretary of State to the former

address until December 7, 2021, were not postmarked until December 9, 2021, and were not actually discovered until late December or early January, all after the Clerk entered Certificates of Default, and after the Defendants' began participating in the case by stating their intention to seek vacatur of the entries of default. (ECF No. 23 ("Def's Reply") at 1–3; ECF No. 24 ("Second Xia Decl.") ¶¶2–3; *see also* ECF No. 24-1 (containing photographs of notices of service sent via certified mail to corporate defendants' former addresses in December 2021). Accordingly, the Defendants deny having received proper service of the complaints, and argue that their defaults were not willful. (Def's Mem. at 4–6; Xia. Decl. ¶ 14).

In response, Plaintiffs argue that contemporaneous messages sent by Xia prove that he had actual notice of the actions after service was completed, such that the defaults were deliberate and likely intentional. (ECF No. 21 ("Pl's Opp.") at 8–10). According to WeChat messages exchanged between Xia and investors on October 15 and October 18, 2021—days after service was completed via nail-and-mail—Xia discussed the filing of a class action with investors, discussed class action issues with attorneys, and shared pictures of the summonses issued against him in both actions, both of which describe the time to respond and the consequences for failure to do so, *i.e.,* the entry of default. (Pl's Opp. at 8–9; ECF No. 22-1 ("WeChat Communications") at 12–14). Accordingly, Plaintiffs argue that Xia was personally aware of the actions, and that by extension the entities he dominates and controls were on notice that responses were required. (Pl's Opp. at 8–9).[4]

---

[4] Plaintiffs also argue that "the Corporate Defendants' failure to update their address with the Secretary of State is not a justifiable excuse." (Pl's Opp. at 9). While this failure demonstrates negligence and inattention that is not to be condoned, courts generally do not consider failure to update an address soon after relocating to indicate willful evasion of service. *See, e.g.*, *FedEx TechConnect, Inc. v. OTI, Inc.*, No. 12 Civ. 1674 (RJS), 2013 WL 5405699, at *6 (S.D.N.Y. Sept. 23, 2013) (collecting cases and noting that courts in the Second Circuit "have not found such a failure, in and of itself, to provide a sufficient basis for concluding that a default was willful" under the stricter Rule 60(b) standard); *see also Heidi & Hans-Jurgen Koch GbR*, 2020 WL 5647793, at *2 (finding no willfulness where defendant "apparently failed to update the New York Secretary of State with its new address after relocating its New York office during the COVID-19 pandemic," where defendant "represented it did not receive any of the documents filed in [the] case" and where no "evidence . . . suggest[ed] that [d]efendant sought to evade service"); *King v. Mastronardi Mason Materials, Inc.*, No. 98-CV-7389, 1999 WL 294738, at *2 (E.D.N.Y. Mar. 22, 1999) ("Although defendant was

Defendants respond that Xia's knowledge of the existence of lawsuits as demonstrated by the WeChat messages is insufficient to demonstrate that he was served or that he knew he was served, and that it is service of process, rather than actual notice of a lawsuit, that triggers a Defendants' duty to respond. (Def's Reply at 2–4). They further argue that after learning of the purported service and certificates of default, Defendants moved quickly to vacate the defaults soon after they were entered. (*Id.* at 4).

Actual notice of a lawsuit is a key consideration in determining whether a defendant's default was willful. *See, e.g.*, *Guggenheim Cap., LLC*, 722 F.3d at 455 (finding willful default where defendant did "not deny that he received the complaint, the court's orders, or the notice of default judgment, or that he never answered the complaint"). Further, "[c]ourts have held a default to be willful when a defendant knew about the complaint and failed to respond." *Saifullah v. U.S. Parole Comm'n,* No. 90-CV-1961 (ILG), 1991 WL 58280, at *1 (E.D.N.Y. Apr. 5, 1991) (citing *Marziliano v. Heckler,* 728 F.2d 151, 156 (2d Cir. 1984); *see also State Farm Mut. Auto. Ins. Co. v. Cohan*, 409 F. App'x 453, 455 (2d Cir. 2011) (affirming district court's finding of willful default where, "despite receiving timely notice of the suit, defendants did not enter an appearance in the district court until nearly four months later," and "[e]ven after entering their appearance . . . defendants failed to answer the complaint or to oppose [plaintiff's] motion for a default judgment[.]"). *Cf. Walden*, 2007 WL 608151, at *3 (finding lack of willfulness where "although properly served through the New York Secretary of State, [defendant] did not have

---

obligated to maintain a correct address with the Secretary of State, the court finds that under the circumstances of this case the default was not willful."). Further, Defendants have adequately demonstrated that the actual notice of service delivered to the corporate defendants' former addresses would not have been received until after the Clerk's entry of default. (Def's Reply at 1–3; Second Xia Decl. ¶¶ 2–3). Accordingly, the Court does not find that the Defendants' failure to update addresses with the Secretary of State demonstrates willfulness.

actual notice of this lawsuit until after default had been entered, and that once it had notice of the entry of the default, it immediately took steps to respond.").

For example, in *Kulwa*, a court in this District found defendant's default willful where he had actual notice of the lawsuit—as evidenced by his seeking multiple extensions of time to file an answer—but was advised by counsel that personal service on an agent, rather than service on the defendant himself, deprived the court of personal jurisdiction and provided a reasonable excuse for his failure to respond to the complaint. *Kulwa*, 2013 WL 504383, at *3. The *Kulwa* court noted that under these circumstances, the defendants' failure to respond to the complaint until after plaintiff sought default judgment reflected "a tactical choice," and that while "the Federal Rules of Civil Procedure permit defendants to raise objections to service of process . . . defendants opted instead to ignore the proceedings, believing that this was the preferred course." *Kulwa*, 2013 WL 504383, at *3 (citing *Ins. Corp. of Ireland v. Compagne des Bauxites de Guinee*, 456 U.S. 694, 706 (1982)).

However, actual notice is not always dispositive of willfulness. For example, in *Puddu*, a court in the Southern District found a defendant's default was not willful, despite his concession that he was aware of the case, where the defendant affirmed that he was not aware that his time to respond had begun, that he would have quickly responded as he had in prior cases if he had known the time to respond had begun to run, and where the same defendant had voluntarily appeared before the court and filed a motion to dismiss shortly after the certificate of default was entered against him. *Puddu v. 6D Glob. Techs., Inc.*, No. 15 Civ. 8061 (AJN), 2020 WL 2833852, at *4 (S.D.N.Y. May 31, 2020). Though it was a "close call," the *Puddu* court found that "in light of his explanations and resolving all doubts in his favor," the defendant's actions did not demonstrate willfulness. *Id.* at *4.

Similarly, here, while Xia's WeChat messages demonstrate that he was aware that summonses were issued in September 2021, they do not demonstrate that he knew he was properly served, that he received a copy of the underlying complaints, or that he knew the time to respond had actually begun. *See Berrocal v. Sheet Music Now, Inc*., No. 19 Civ. 5123 (ALC), 2020 WL 4570339, at *2 (S.D.N.Y. Aug. 7, 2020) ("To the extent there are factual disputes regarding [d]efendant's knowledge of adequate service and its response deadline, these disputes are resolved in favor of [d]efendant as the defaulting party.") (citing *Golomb Mercantile Co. LLC v. Marks Paneth LLP*, 18 Civ. 3845, 2019 WL 6790678, at *5 (S.D.N.Y. Dec. 12, 2019)). And while Xia apparently discussed the ramifications of a class action on potential class members with an attorney and with investors,[5] the letter to the Court filed immediately after the certificates of default were entered indicates that counsel had not been retained by Defendants for this matter specifically until after default was entered. (ECF No. 14). Accordingly, unlike in *Kulwa*, Xia's failure to respond to the complaints was not an obviously counseled decision and a "tactical choice" to ignore a known attempt at service. *Kulwa*, 2013 WL 504383, at *3. Rather, resolving any doubts in Defendants' favor, Defendants did not know that they were adequately served or that the time to respond had begun, and acted appropriately in response to the certificates of default once they became aware of them. Indeed, as in *Puddu*, while Xia's decision to "sit by and await service of the pleadings having been made aware of the fact that he had been named as a Defendant in [the] action" was likely "careless or even grossly negligent," the Court does not find that it rises to the level of willfulness. *Puddu*, 2020 WL 2833852, at *4.

---

[5] Defendant also notes that Plaintiffs' translated WeChat messages selectively omitted a portion of the conversation, in which an investor posed a hypothetical ("What if someone does a class action and we are unwittingly represented?"), that Xia responded that he would "consult with our legal team and get back to you," and that Xia subsequently responded with advice from counsel that investors would have an opportunity to opt out of such a class. (Def's Reply at 4–5; Second Xia Decl. ¶¶6–8).

Further, Defendants' quick reaction after learning of the purported service and certificates of default, filing a letter within a week and a formal motion to set aside default within two weeks of the entries of default, was consistent with the active defensive posture that they have taken in prior litigation and also counsels against a finding of willful default. (Def's Reply at 5). *See Newsnjoy USA,* 2014 WL 923394, at *4 ("Within three weeks of the entry of default, defendants had retained counsel and filed the instant motion . . . . Under such circumstances, the short delay in answering appears excusable."); *Gov't Emps. Ins. Co. v. Five Boro Psychological Servs., P.C.,* No. 12-CV-2448 (JG) (VMS), 2013 WL 12358694, at *4 (E.D.N.Y. Feb. 8, 2013) ("A three-day response to the entry of default shows no willfulness as to not participating in the defense to the litigation."); *Flanagan*, 2008 WL 2559377, at *3 (resolving doubts in defendants favor regarding initial service of process issues and crediting immediate steps defendants took to vacate default after receiving motion for default judgment). *Cf. Gibraltar Contracting Co.*, 2020 WL 9209262, at *5–6 (finding that three month delay before pursuing vacatur of default judgment supported a finding of willfulness).

As in *Puddu*, this is a "close call." *Puddu*, 2020 WL 2833852, at *4. However, taking into account Defendants' explanations, the short period of time between the entry of default and Defendants' action in the case, and the lenient standard of Rule 55(c) which requires that the Court resolve all doubts regarding willfulness in the Defendants' favor, the Court finds that the Defendants here did not deliberately default. Therefore, this factor weighs in favor of vacating the entries of default.

## II.   Meritorious Defenses

"In order to make a sufficient showing of a meritorious defense in connection with a motion to set aside a default, the defendant need not establish his defense conclusively, but he must present

credible evidence of facts that would constitute a complete defense." *Cohan*, 409 F. App'x at 456 (citing *Enron Oil Corp.*, 10 F.3d at 98). *See also Green*, 420 F.3d at 110 ("We have previously held that a 'defendant must present more than conclusory denials when attempting to show the existence of a meritorious defense.'") (quoting *Pecarsky*, 249 F.3d at 173)); *Sony Corp.*, 800 F.2d at 320–21 ("Although in an answer general denials normally are enough to raise a meritorious defense, the moving party on a motion to reopen the default must support its general denials with some underlying facts."); *Am. All. Ins. Co.*, 92 F.3d at 61 ("A defense is meritorious if it is good at law so as to give the factfinder some determination to make.") (quoting *Anilina Fabrique de Colorants v. Aakash Chemicals and Dyestuffs, Inc.*, 856 F.2d 873, 879 (7th Cir. 1988)). While "a defendant must do more than merely 'allege that a defense exists,' courts in this Circuit routinely recognize that a defendant need only 'meet a low threshold' to satisfy this factor." *MD Produce Corp. v. 231 Food Corp.*, 304 F.R.D. 107, 110 (E.D.N.Y. 2014) (quoting *Dudley v. Pendagrass*, No. 06–CV–216 (RJD) (LB), 2008 WL 4790501, at *4 (E.D.N.Y. Oct. 31, 2008); citing *Allen v. Norman*, No. 08 Civ. 6041 (BSJ) (HBP), 2012 WL 3525584, at *6 (S.D.N.Y. July 23, 2012); *Woodson v. Loram Maintenance of Way, Inc.*, No. 10–CV–6263L (DGL), 2011 WL 3608232, at *1 (W.D.N.Y. Aug. 12, 2011)).

In addition to a defense based on credible evidence of facts, "[a] legal defense may also satisfy the meritorious defense element." *Five Boro*, 2013 WL 12358694, at *6 (citing *Woodson*, 2011 WL 3608232, at *1 (W.D.N.Y. Aug. 12, 2011)). The same "low threshold" applies: "[a] defendant need not 'conclusively establish the validity of the defenses(s) asserted' for it to qualify as a meritorious defense." *Id.* (quoting *Davis v. Musler*, 713 F.2d 907, 916 (2d Cir. 1983)); *see also Sacks v. Deutsche Bank Nat'l Tr. Co. as Tr. for Am. Home Mortg. Inv. Tr. 2006-3*, No. 12-CV-6338 (LDW) (SIL), 2016 WL 11480710, at *8 (E.D.N.Y. Aug. 15, 2016) ("[E]stablishing a

meritorious defense 'is not a stringent burden.'") (quoting *U.S. Commodity Futures Trading Comm'n v. Musorofiti*, No. 05-CV-3917 (ARR) (JO), 2007 WL 2089388, at *4 (E.D.N.Y. July 17, 2007)), *adopted sub nom. Sacks v. Deutsche Bank Nat'l Tr. Co.*, 2016 WL 5338540 (Sept. 23, 2016). Indeed, to satisfy this low threshold, "[d]efendants do not need to establish a meritorious defense for each claim . . . in order for the meritorious defense factor to weigh in their favor." *Simmons v. Sea Gate Ass'n*, No. 12-CV-4949 (WFK) (JMA), 2013 WL 5774594, at *7 (E.D.N.Y. Oct. 24, 2013) (citing *Saunders v. Morton*, 269 F.R.D. 387, 404 (D. Vt. 2010)). Further, in considering this factor, "[t]he Court does not need to make a finding as to whether all of the [d]efendants' affirmative defenses are meritorious." *Addison v. Reitman Blacktop, Inc.*, 272 F.R.D. 72, 81 (E.D.N.Y. 2010).

Here, Defendants raise several legal defenses to this action sufficient to clear this low bar. (Def's Mem. at 6–12) (claiming lack of subject matter jurisdiction, failure to adequately state a claim of breach of fiduciary duty, failure to adequately plead fraud to the degree of specificity required by Rule 9(b), failure to plead damages, and statute of limitations defenses). For example, with respect to subject matter jurisdiction, Defendants contend that the complete diversity required by 28 U.S.C. § 1332(a) is impossible where, as here, a limited partner brings suit against a partnership, *see Curley v. Brignoli, Curley & Roberts Assocs.,* 915 F.2d 81, 83–84 (2d Cir. 1990) (citing *Carden v. Arkoma Associates*, 494 U.S. 185 (1990)), and that jurisdiction under the Class Action Fairness Act ("CAFA") is inappropriate where, despite meeting minimal diversity requirements, only four plaintiffs purport to represent a class of 270 investors, at least eighty-three of those investors oppose the litigation, and Plaintiffs have not established that they have conducted sufficient inquiry to determine whether others are on board. (Def's Mem. at 8–9; *see also* ECF No. 19-4 ("Letter from Investors' Counsel")). However, as Plaintiffs note, even

16

accounting for the eighty-three identified "opt out" investors, the number of remaining limited partners and the value of their aggregated claims exceed the relevant CAFA requirements, i.e., more than 100 class members and an amount in controversy of more than $5,000,000. (Pl's Opp. at 11–12); *see also* 28 U.S.C. § 1332(d). Nevertheless, "[w]hen the complaint fails to allege a specific damages amount, and facts relating to the jurisdictional amount are challenged," the party asserting the Court's jurisdiction "must establish the requisite amount in controversy 'with competent proof and justify [its] allegations by a preponderance of evidence.'" *Smith v. Manhattan Club Timeshare Ass'n, Inc*., 944 F. Supp. 2d 244, 250 (S.D.N.Y. 2013) (quoting *United Food & Commercial Workers Union, Local 919, AFL–CIO v. CenterMark Properties Meriden Square, Inc.,* 30 F.3d 298, 305 (2d Cir. 1994)).

Though Plaintiffs have alleged the number of investors participating in each offering and the corresponding amounts raised, they have not alleged any specific amount in damages and have not put forward specific proof to support jurisdiction at this early stage. Accordingly, Defendants have identified issues regarding the court's jurisdiction, such that further briefing and consideration is warranted, and such that they have raised a meritorious legal defense. *See Lawtone-Bowles v. Seneca Cty. Corr. Div.,* No. 16-CV-227V(F), 2021 WL 4034525, at *3 (W.D.N.Y. Sept. 3, 2021) (granting motion to vacate entry of default where defendants proposed meritorious defenses include lack of subject matter jurisdiction, noting that defendants' "assertion that [p]laintiff . . . lacks standing to assert any claim . . . whether proven upon a later dispositive motion or at trial, would constitute a complete defense to this action."); *Bos. Post Rd. Med. Imaging, P.C. v. Allstate Ins. Co.*, 221 F.R.D. 410, 414 (S.D.N.Y. 2004) ("As lack of subject matter jurisdiction would be a complete defense to the action, [defendant] has shown the existence of a meritorious defense in the very limited sense of that term employed on motions to vacate default judgment.").

Similarly, with respect to the statute of limitations, Defendants argue that Plaintiffs fraud claims are time-barred where the alleged misrepresentations were made in offering materials that were distributed more than six years before the suits were filed and where alleged discrepancies between those documents and publicly filed project plans were discoverable more than two years before the suits were filed. (Def's Mem. at 12). Plaintiffs contend that they did not discover the fraud until they retained counsel last year, that the fiduciary relationship between the Plaintiffs and Defendants reduces their burden of discovery, and that the statute of limitations should be tolled under state and federal law. (Pl's Opp. at 13–15). Again, the Court finds that the parties have each raised valid points on the issue that merit further briefing and consideration on the merits. *See, e.g.*, *Clark v. New York City Hous. Auth.*, No. 20 Civ. 251 (PAE) (GWG), 2021 WL 2368132, at *5 (S.D.N.Y. June 10, 2021) ("At this stage, without the benefit of full briefing, the Court has not definitively concluded that [defendant's] arguments would bar [plaintiff's] claims. But because 'all doubts must be resolved in favor of trial on the merits,' [defendant] has 'made a sufficient showing at this juncture to justify further briefing and consideration' on the merits.'") (first quoting *Enron Oil Corp.*, 10 F.3d at 98; then quoting *Davis*, 713 F.2d at 916). *But see Cohan*, 409 F. App'x at 456 (affirming decision denying vacatur of default where defendant's "affidavit does not identify the claims to which a statute-of-limitations defense might be applicable, nor does it consider whether exceptions to the normal limitations period—such as equitable tolling or the discovery rule—would apply in this case."); *Am. Transit Ins. Co. v. Bilyk*, 546 F. Supp. 3d 192, 203 (E.D.N.Y. 2021) (finding defendants failed to demonstrate meritorious statute of limitations defense where "[d]efendants do not provide evidence countering application of equitable tolling or the discovery rule to plaintiff's allegations that it could not earlier discover the fraud because of defendants' efforts to conceal it.").

The Court need not consider the parties' numerous additional arguments regarding potential meritorious defenses to other specific claims. *See Addison*, 272 F.R.D. at 81 ("The Court does not need to make a finding as to whether all of the Defendants' affirmative defenses are meritorious."). Instead, given the disfavored nature of defaults and the lenient construction of Rule 55(c) in this Circuit, the Court finds that either of the two defenses raised by Defendants and discussed above satisfies the low threshold required such that the second factor weighs in favor of vacating the entries of default. *See Smith v. Wilson*, No. 15-CV-01215 (VAB), 2016 WL 11295452, at *2 (D. Conn. June 3, 2016) (setting aside default "in light of this Circuit's preference for resolving disputes on the merits, and this Court's obligation to construe generously Rule 55(c)'s good cause requirement" where defendant raised lack of subject matter jurisdiction and statute of limitations defenses).

III.  <u>Prejudice to Plaintiffs</u>

"[D]elay alone is not a sufficient basis for establishing prejudice. . . . Rather, it must be shown that delay will 'result in the loss of evidence, create increased difficulties of discovery, or provide greater opportunity for fraud and collusion.'" *Davis*, 713 F.2d at 916 (quoting C. Wright, A. Miller and M. Kane, Federal Practice and Procedure: Civil, § 2699 at 536–37 (1983); citing *Feliciano v. Reliant Tooling Co.*, Ltd., 691 F.2d 653, 656–57 (3d Cir. 1982); *Gill v. Stolow*, 240 F.2d 669, 672 (2d Cir. 1957)); *see also Am. Empire Surplus Lines Ins. Co. v. Concord Restoration Inc.*, No. 20-CV-2341 (RPK) (RER), 2021 WL 7830142, at *7 (E.D.N.Y. July 28, 2021), *adopted in part by* 2022 WL 950432 (Mar. 30, 2022) ("A party is prejudiced when its 'ability to proceed [with its] case is impaired.'") (quoting *Walden*, 2007 WL 608151, at *3) (alteration in original). Courts assessing whether this factor weighs in favor of vacating entry of default typically consider whether the defendant's delayed response will cause tangible discovery issues, such as unavailable

or forgetful witnesses or the destruction of evidence. *See, e.g.*, *Newsnjoy, USA*, 2014 WL 923394, at *5 (finding no prejudice where defendants moved to vacate "shortly after the default was entered, discovery has not commenced and there is no suggestion that evidence has been lost or destroyed, witnesses have become unavailable or lost their memory regarding pertinent events, or opportunities for fraud has ensued."); *Francis v. Ideal Masonry, Inc.*, No. 16-CV-2839 (NGG) (PK), 2020 WL 6737463, at *6 (E.D.N.Y. Nov. 17, 2020) (noting that prejudice plaintiffs expect to suffer in dealing with uncooperative and evasive defendants was well-founded given defendants' behavior in the litigation, but was not tied to specific concerns regarding witness availability or lost evidence, and was therefore not sufficiently severe to weigh strongly in favor of granting or denying motion to vacate default).

Defendants here argue that the short delay between the entries of default and the motion to vacate those entries of default makes prejudice unlikely, and that the Court's entry of a TRO freezing Defendants' assets in connection with the SEC action also renders unlikely any greater opportunity for fraud and collusion or any depletion of funds that would otherwise be available to Plaintiffs in the event of an adverse judgment. (Def's Mem. at 12–13; *see also* TRO, *S.E.C. v. Xia et al.*, 21-CV-5350 (E.D.N.Y. Sept. 27, 2021)). Plaintiffs respond that the TRO's temporary nature may allow Defendant's to further misappropriate funds in the future if the freeze is lifted, and that any further delay in resolving this case therefore risks the possibility that funds won't be recoverable in the event of an adverse judgment. (Pl's Opp. at 18).

However, courts generally do not consider a non-defaulting party's speculation regarding the recoverability of funds to be an important factor in assessing whether a party will be prejudiced by vacatur of default. *See Gil v. Frantzis,* No. 17-CV-1520 (ARR) (SJB), 2019 WL 5694074, at *12 (E.D.N.Y. Aug. 22, 2019) (noting that plaintiff's concerns regarding competing creditors

potentially filing suit and jeopardizing recovery "do not constitute prejudice," and are "unsupported conjecture"), *adopted by* 2019 WL 4784674 (Oct. 1, 2019); *Llolla v. Karen Gardens Apartment Corp.*, No. 12-CV-1356 (MKB) (JO), 2015 WL 13731354, at *4 (E.D.N.Y. July 2, 2015), *adopted by* 2016 WL 233665 (Jan. 20, 2016) (finding no prejudice where plaintiff speculates that defendant "may attempt to hide its assets in order to avoid paying a judgment . . . . [b]ut the record includes no evidence to suggest that [defendant] has sought to hide its assets or that it will do so.").[6] Given the strong guardrails that have been imposed by the TRO to prevent misappropriation of funds, including the asset freeze and the appointment of a corporate monitor, the Court agrees that the risk of non-recovery is too speculative here to constitute prejudice.

Plaintiffs also argue that WeChat communications demonstrate that delay has already offered additional opportunities for fraud and collusion, since Defendants have improperly used the delay to scare investors out of pursuing meritorious claims, to continue making misrepresentations regarding the project, and to "spend[] their time poisoning the well through self-serving communications to investors, rather than actually litigating claims against them in a timely manner." (Pl's Opp. at 19; *see also* WeChat Communications at 2–22). Defendants respond that Xia's communications with "non-party investors" regarding "why a class action would be against their interests . . . is not prejudice, and such communications are legal and entirely routine in class

---

[6] Plaintiffs cite three cases for the proposition that "courts have found prejudice when there is a risk that delay would jeopardize recoverability of funds." (Pl's Opp. at 18 (citing *Oncay v. Inflasafe*, No. 19-CV-1428 (GTS) (CFH), 2021 WL 1055155, at *7 (N.D.N.Y. Mar. 19, 2021); *First Technology Capital, Inc. v. Airborne, Inc.*, 378 F. Supp. 3d 212, 218 (W.D.N.Y. 2019); *In re FKF 3, LLC*, 501 B.R. 491, 507 (S.D.N.Y. 2013)). The first two cases concern whether default *judgment* is warranted, rather than vacatur of default. *See Oncay*, 2021 WL 1055155, at *7; *First Technology Capital, Inc.*, 378 F. Supp. 3d at 218. The third involves an appeal from a bankruptcy court's order granting default judgment in an adversary proceeding, which, though treated as a motion to vacate entry of default, included testimony from the defendants and potential judgment debtors underscoring the fact that that they would be unable to satisfy the default judgment that was already entered. *In re FKF 3, LLC*, 501 B.R. at 507.

action lawsuits." (Def's Reply at 10 (citing *Weight Watchers of Phila., Inc. v. Weight Watchers Int'l, Inc.*, 455 F.2d 770, 773 (2d Cir. 1972)).

Despite Defendants' argument to the contrary, it is well established that "when a defendant contacts putative class members for the purpose of altering the status of a pending litigation, such communication is improper without judicial authorization." *Gortat v. Capala Bros.,* No. 07-CV-3629 (ILG) (SMG), 2009 WL 3347091, at *4 (E.D.N.Y. Oct. 16, 2009) (citing *In re Currency Conversion Fee Antitrust Litig.*, 361 F.Supp.2d 237, 252–53 (S.D.N.Y.2005)), *adopted by* 2010 WL 1423018 (E.D.N.Y. Apr. 9, 2010), *aff'd*, 568 F. App'x 78 (2d Cir. 2014); *see also Gulf Oil Co. v. Bernard,* 452 U.S. 89, 100 (1981) ("Because of the potential for abuse, a district court has both the duty and the broad authority to exercise control over a class action and to enter appropriate orders governing the conduct of counsel and parties."); *Dziennik v. Sealift, Inc*., No. 05-CV-4659 (DLI) (MDG), 2006 WL 1455464, at *3 (E.D.N.Y. May 23, 2006) ("Misleading communications to class members concerning the litigation pose a serious threat to the fairness of the litigation process, the adequacy of representation and the administration of justice generally.") (quoting *In re School Asbestos Litig*., 842 F.2d 671, 683 (3d Cir. 1988)). In particular, "[i]f the class and the class opponent are involved in an ongoing business relationship, communications from the class opponent to the class may be coercive." *Sorrentino v. ASN Roosevelt Ctr. LLC*, 584 F. Supp. 2d 529, 533 (E.D.N.Y. 2008) (quoting *In re Currency Conversion Fee Antitrust Litig.*, 361 F.Supp.2d at 253). Here, Xia's clear attempts to affect the litigation and unilaterally coerce investors into expressing opposition to the class action are particularly problematic given his ongoing business relationship with the putative class members. This concerning conduct is not alleviated by the fact that the "opt out" investors have obtained separate counsel, since the WeChat communications indicate that they had done so only after learning "the opinion of Mr. Xia's attorney." (WeChat

Communications at 11, 14–17). The Defendants are accordingly strongly admonished to refrain from communicating with investors through improper backchannels outside the presence of counsel.

While these communications were improper and certainly bear some weight in considering whether Plaintiffs have suffered prejudice as a result of Defendants actions, the prejudice caused by these communications exists independently of Defendants' defaults and their delay in responding to the complaints. Put differently, such improper communications could have occurred regardless of whether Defendants responded to the complaints; indeed, as discussed above, Xia's knowledge of the existence of the actions and his communications with investors were not contingent upon his knowledge that he was properly served. Accordingly, these improper communications are not sufficient to constitute prejudice to withstand this Circuit's preference for resolving disputes on the merits.

Since (1) Defendants quickly responded upon learning of the entry of default, (2) discovery has not yet begun, and Plaintiffs have pointed to no discovery issues that will result from Defendants' delayed response, (3) since court imposed guardrails, including the TRO in the SEC action and this Court's strong warning to the Defendants not to communicate with putative class members are sufficient to prevent fraud and collusion, and (4) since this Circuit favors resolving disputes on the merits, the Court finds that the third factor does not weigh strongly in favor of denying Defendants' request to set aside the Clerk's entries of default.

## **CONCLUSION**

Given the totality of the circumstances and the lenient "good cause" standard imposed by Rule 55(c), the Court finds that, on balance, the *Enron* factors weigh in favor of vacating Defendants' defaults. Accordingly, for the reasons set forth above, Defendants' motion to vacate the entries of

default (ECF No. 17) is granted. The Clerk of the Court is accordingly directed to vacate the defaults entered against all Defendants on November 30, 2021. (ECF No. 12; *see also* ECF No. 12, *Ai*, 21-CV-5250 (E.D.N.Y. Nov. 30, 2021)). Defendants are directed to file and serve answers to the complaints within twenty (20) days of receipt of this Memorandum and Order.

SO ORDERED.

**/s/ Ramon E. Reyes, Jr.**

RAMON E. REYES, JR.
United States Magistrate Judge

Dated: May 25, 2022
Brooklyn, NY